**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

BUDD LARNER, P.C.
Michael M. Rosenbaum, Esq. (MR-6304)
150 John F. Kennedy Parkway, CN1000
Short Hills, New Jersey 07078-0999
(973) 379-4800
Attorneys for Plaintiffs

| | |
|---|---|
| YORKVILLE ADVISORS MANAGEMENT, LLC, a Delaware limited liability company; HIGHGATE HOUSE FUNDS, LTD., a Cayman Islands exempted company, : : : : | Civil Action No. |
| Plaintiffs, : | |
| vs. : | |
| ADAM S. GOTTBETTER; HH ADVISORS, LLC, a New York limited liability company; GOTTBETTER AND PARTNERS LLP, a New York limited liability partnership; JASON RIMLAND, ESQ.; TIM L. DOCKERY, ESQ., and MICHAEL CHORSKE, : : : : : : : : | **VERIFIED COMPLAINT** |
| Defendants. : | |

Plaintiffs, by way of Verified Complaint against defendants, hereby state as follows:

**INTRODUCTION**

1.      In November 2005, in connection with its funding of Charys Holding Company, Inc. ("Charys"), a small publicly traded company, Plaintiff Highgate House Funds, LTD. ("Highgate House") was issued warrants to purchase 1,000,000 shares of Charys common stock ("the Charys Warrants"). The Charys Warrants, registered in the name of Highgate House, were being held in trust by Defendants Adam S. Gottbetter ("Gottbetter") and Gottbetter and Partners LLP ("G&P").  A

1

dispute has now arisen between Plaintiff Yorkville Advisors Management LLC (Highgate House's investment manager) ("Yorkville") and Defendants Gottbetter and HH Advisors, LLC ("HHA"), who formerly served as Highgate House's Co-Portfolio Manager, over commissions that Defendants claim will be due to them from the sale of the Charys common stock underlying the Charys Warrants. That dispute is arbitrable in accordance with a written agreement dated November 1, 2004.

2.      Plaintiffs learned during the week of October 23, 2006 that Gottbetter and G&P improperly converted some of the Charys warrants owned by Highgate House and caused them to be reissued in the names of HHA, Defendant Michael Chorske and possibly Defendant Jason Rimland. Upon information and belief, they did so by falsely telling Charys that Highgate House was no longer in existence, and/or by executing the Charys Warrants on behalf of Highgate House or executing assignments on behalf of Highgate House – all without Highgate House's knowledge or authority.

3.      Defendants' actions in contravention of their fiduciary duties are likely to cause irreparable harm to Highgate House. Plaintiffs therefore seek a Temporary Restraining Order restraining defendants from disposing of the Charys Warrants and the underlying stock until the return date, at which time plaintiffs will seek a preliminary injunction directing defendants to return the Charys Warrants to them and/or to give instructions to Charys to reissue the warrants to Highgate House.

## THE PARTIES

4.      Plaintiff Highgate House is a Cayman Islands exempted company with its principal place of business in Jersey City, New Jersey. At all relevant times hereto, Highgate House was and still is a private equity fund that specializes in providing Private Investment in Public Equities

2

("PIPE") funding and related structured financing and investment strategies with respect to smaller publicly traded companies.

5. Plaintiff Yorkville is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Jersey City, New Jersey. At all relevant times hereto, Yorkville was and still is the investment manager of Highgate House.

6. Defendant HHA is a limited liability company organized under the laws of the State of New York with its principal place of business located in New York City. HHA is the former Co-Portfolio Manager of Highgate House.

7. Defendant Gottbetter is a resident of the State of New York and is one of two principals of HHA. Along with HHA, Gottbetter is a former Co-Portfolio Manager of Highgate House and is Highgate House's former attorney in connection with the transaction at issue herein.

8. Defendant Gottbetter & Partners, LLP ("G&P") is a limited liability partnership organized under the laws of the State of New York and is a law firm engaged in the practice of corporate and securities law and related fields with its principal place of business located at 488 Madison Avenue, New York, New York. G&P, along with Gottbetter and other members and associates of the firm, represented Highgate House in the transaction at issue in this lawsuit as well as numerous other unrelated transactions. G&P is the designated Escrow Agent holding the shares of Charys common stock underlying the Charys Warrants issued to Highgate House.

9. Defendant Michael Chorske is a resident of the State of New York.

10. Defendant Jason Rimland, Esq. is an attorney at law and a member of the Connecticut and New York bars. He is a resident of the State of New York and is associated with Defendant G&P.

3

11.     Defendant Timothy L. Dockery, Esq. is an attorney at law and a member of the New York bar. He is a resident of the State of New York and is associated with Defendant G&P.

## JURISDICTION AND VENUE

12.     Jurisdiction of this court is invoked pursuant to the provisions of 28 U.S.C.A. § 1332 by reason of diversity of citizenship of the parties. The matter in controversy, exclusive of interest and costs, exceeds $75,000.

13.     Venue is properly laid in this District pursuant to the provisions of 28 U.S.C.A. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

## FACTUAL BACKGROUND

### Yorkville's Engagement of HHA and Gottbetter

14.     In November 2004, Yorkville engaged Defendant HHA, of which Defendant Gottbetter was a principal, and Gottbetter, individually, to serve as Co-Portfolio Manager for Highgate House ("the Engagement"), pursuant to a November 1, 2004 letter agreement ("the Sub-Manager Agreement"). Annexed hereto as Exhibit A is a true and correct copy of the Sub-Manager Agreement.

15.     In return for the lucrative compensation arrangement provided for in the Sub-Manager Agreement and elsewhere, HHA and Gottbetter agreed to be subject to various fiduciary obligations and restrictive covenants during the term of the Engagement and for 18 months thereafter.

16.     In general, the Sub-Manager Agreement stated that HHA and Gottbetter "shall jointly and [severally] owe a fiduciary duty to the Funds and [Yorkville] and, in that regard, shall owe a duty of trust, utmost loyalty and good faith to the Funds and [Yorkville]."

4

17.    The Sub-Manager Agreement imposed upon Gottbetter and HHA a fiduciary duty of good faith and loyalty toward Highgate House and Yorkville in connection with HHA's and Gottbetter's responsibilities and actions as co-Manager of Highgate House.

18.    HHA and Gottbetter voluntarily terminated the Engagement on or about January 9, 2006, effective on January 19, 2006.

### The Charys Transaction

19.    During November 2005, HHA and Gottbetter caused Highgate House to make a $4 million investment in Charys, a small publicly-traded company ("the Charys Transaction"). As part of the consideration for this investment, Highgate House received a convertible debenture and warrants to purchase 1,000,000 shares of Charys common stock ("the Charys Warrants"). The Charys Warrants were issued to, and registered in the name of, Highgate House. A true and correct copy of the Securities Purchase Agreement (the "Charys Agreement") that served as the master agreement for the Charys Transaction is annexed hereto as Exhibit B. True and correct copies of the Charys Warrants are annexed hereto as Exhibit C.

20.    Defendant Gottbetter is also a practicing corporate and securities law attorney. Defendants Rimland and Dockery are lawyers associated with G&P. Gottbetter and G&P represented plaintiffs with respect to the Charys Transaction which closed on or about November 16, 2005 (at times hereinafter, Defendants Gottbetter, G&P, Rimland and Dockery will be referred to collectively as the "Lawyer Defendants").

21.    After the Charys Transaction closed, the Lawyer Defendants delivered to Highgate House the "Closing Binder" for the Charys Transaction.

22.    When the Lawyer Defendants delivered the Closing Binder to Highgate House, they did not disclose that it did not include the "original" Charys Warrants. Instead, plaintiffs recently learned the Closing Binder contained only copies of those Charys Warrants, which again, were registered in the name of plaintiff Highgate House. Plaintiffs have since learned that Defendants Gottbetter and G&P kept the original Charys Warrants and thus held them in trust for the benefit of Highgate House.

23.    By removing from Plaintiffs' premises the original Charys Warrant certificates issued to and registered in the name of Highgate House, the Lawyer Defendants held those Warrants in trust for the sole and exclusive benefit of Highgate House and assumed a fiduciary duty over plaintiffs' property.

### Defendants' Conversion of the Charys Warrants

24.    The Charys Warrants were issued to and owned by Highgate House, and only Highgate House had the legal authority to assign, transfer, or to authorize Charys to "reissue" the Charys Warrants. At the present time, the Charys Warrants have a value in the range of $3.5 to $4 million.

25.    Troy Rillo is a director of Highgate House. On October 16, 2006, Mr. Rillo received a telephone call from Sonia H. Sun, who identified herself as an attorney with the law firm of Morris Manning & Martin LLP, outside legal counsel for Charys.

26.    Ms. Sun advised Mr. Rillo that Charys was preparing to file a "Registration Statement" with the Securities & Exchange Commission ("SEC") and that, in connection with that imminent filing, she wished to confirm ownership of the Charys Warrants. She advised that in a recent conversation with Defendant Dockery, he represented to her (a) that Highgate House was no

longer in existence and (b) that the Charys Warrants issued to Highgate House had been transferred to Defendants HHA, Rimland and Chorske.

27. The representations by Defendant Dockery to Ms. Sun were false and fraudulent and made with the intent of misleading Charys to enable Defendants to convert the Charys Warrants to their own use and benefit.

28. Mr. Rillo informed Ms. Sun that Mr. Dockery had misrepresented Highgate House's status and ownership of the Charys Warrants and confirmed to her (a) that Highgate House was still in existence and (b) that Highgate House still held the Charys Warrants. Rillo confirmed these facts to Ms. Sun in a letter he issued to her on October 17, 2006. A true and correct copy of that letter is annexed hereto as Exhibit D.

29. After his telephone conversation with Ms. Sun, Mr. Rillo reviewed the Charys Closing Binder and discovered that it contained only *copies* of the Charys Warrants registered in the name of Highgate House, and that the originals were missing.

30. On October 17, 2006, Charys filed a Registration Statement with the SEC. In its Registration Statement, Charys represented to the SEC, the equity markets, and the investing public that – as was in fact true and correct – Highgate House held warrants to purchase 1,000,000 shares of Charys common stock and that Mark Angelo – a director of Highgate House – exercised "dispositive and voting power over" the "1,000,000 shares issuable upon the exercise of Warrants…" True and correct copies of the relevant pages of the Charys Registration Statement are annexed hereto as Exhibit E (See page 104 of 264 at note 42, which is page 100 of the Registration Statement).

31.   On October 17, 2006, Plaintiffs' outside legal counsel sent a letter to August C. Venturini, outside legal counsel for Defendants HHA and Gottbetter, demanding the return of the original Charys Warrants. A true and correct copy of this letter is annexed hereto as Exhibit F.

32.   Defendants HHA and Gottbetter did not return the Charys Warrants to either Plaintiffs or their outside counsel.

33.   On October 18, 2006, Highgate House delivered Warrant Exercise Notices to Charys, exercising its right to purchase 500,000 shares (out of the available 1,000,000 shares) of Charys common stock. True and correct copies of the three Warrant Exercise Notices and a true and correct copy of the covering letter from Troy Rillo of Highgate House to Billy Ray , the President of Charys, dated October 18, 2006 is annexed hereto as Exhibit G.[1]

34.   G&P, which was also holding the underlying shares of Charys stock to be delivered to Highgate House upon the exercise of the Charys Warrants, failed to deliver any Charys stock to plaintiffs. Rather, on October 20, 2006, defendant Rimland telephoned Mr. Rillo to advise him that Charys had reissued the Charys Warrants to himself, Chorske and HHA.

35.   The reissuance of the Charys Warrants by defendants was confirmed by an October 20, 2006 letter written by Mr. Venturini to plaintiffs' outside counsel. That letter stated that the "issuer", i.e., Charys, had reissued the 1,000,000 Charys Warrants, giving Highgate House the right to purchase only 444,800 shares and conveying the right to purchase the other 555,200 shares to Defendants HHA and Chorske ("the Reissued Warrants"). A true and correct copy of Mr. Venturini's letter is annexed hereto as Exhibit H.

---

[1] The cover letter was erroneously dated "May 19, 2006" due to a typographical error. As indicated by the October 18, 2006 date on the second page "header" and the handwritten October 18, 2006 date on the Warrant Exercise Notices themselves, Highgate Houses' attempt to partially exercise the Warrants occurred on October 18, 2006.

36.     Defendants' instructions to Charys to reissue the Charys Warrants was in violation of their fiduciary duties as trustee of the Charys Warrants, and was effectuated either by their improper endorsement of the Charys Warrants or their improper execution of assignment forms, all under the name of plaintiff Highgate House.

37.     On October 24, 2006, plaintiffs' outside counsel wrote to Mr. Venturini demanding that any Reissued Warrants be immediately delivered to Highgate House and/or that Defendants take all actions necessary to have Charys reverse whatever transfers may have occurred and restore Highgate House's right to purchase 1,000,000 shares of Charys common stock as provided in the Charys Warrants, and that these actions occur not later than the close of business on October 25, 2006.  A true and correct copy of the October 24, 2006 letter is annexed hereto as Exhibit I.

38.     In an October 25, 2005 letter, Mr. Venturini refused to comply with Plaintiffs' counsel's demand on the purported basis that his clients were claiming a contractual right to a portion of the Charys Warrants as part of a "fee split" they were allegedly due under the Sub-Manager Agreement and the Charys Agreement.  A true and correct copy of Mr. Venturini's October 25, 2006 letter is annexed hereto as Exhibit J.

39.     Plaintiffs have disputed defendants' entitlement to all or any part of the warrants, which dispute will be the subject of an arbitration in accordance with the November 1, 2004 Sub-Manager Agreement.

40.     On October 26, 2006, Defendant Gottbetter, writing on behalf of G&P, wrote to Troy Rillo of Highgate House.  Gottbetter enclosed with the letter "warrants issued to Highgate House Funds, Ltd.... to purchase 444,800 shares of [Charys]" and stated that, in accordance with purported agreements between Yorkville and HHA, the original Charys Warrants to purchase 1,000,000 shares

9

of common stock "have been distributed with (i) 20% (200,000) being paid to a banker as a banker's fee, (ii) 44.4% of the remainder (800,000 warrants) being paid to HH Advisors (355,200) and (iii) the remainder staying with Highgate." A true and correct copy of Gottbetter's October 26, 2006 letter is annexed hereto as Exhibit K.

The Underlying Dispute

41.     The Sub-Manager Agreement of November 1, 2004 contains a provision mandating arbitration of disputes between and among Plaintiff Yorkville and Defendants HHA and Gottbetter. See Exhibit A, at § 10. If, as they claim, Defendants believe they have a right to share in the Charys Warrants as part of their fee, their remedy is to arbitrate their dispute with Yorkville, not to engage in "self-help" to the detriment of the individual investors in Highgate House.

42.     Defendants had no legal authority to assign, transfer, or cause Charys to reissue the Charys Warrants from Highgate House's name to some or all of their own names. Defendants' actions can fairly be characterized as a theft and conversion of Highgate House's Charys Warrants.

·   **INJUNCTIVE RELIEF REQUESTED**

43.     Plaintiffs bring this action to undo Defendants illegal transfer of Highgate House's property and to recover the converted Charys Warrants and, if the Reissued Warrants have already been exercised by Defendants, the Charys common stock issued as a result of the exercise of the Reissued Warrants.

44.     Plaintiffs are immediately entitled to a temporary restraining order: (a) enjoining and prohibiting Defendants from exercising or otherwise disposing of the Charys Warrants or the "Reissued Warrants"; or (b) to the extent Defendants have already exercised the Reissued Warrants, enjoining and prohibiting Defendants from selling, assigning, hypothecating, pledging or otherwise

10

disposing of the underlying Charys stock; or (c) to the extent Defendants have already sold the underlying stock, imposing a constructive trust on the proceeds of such sale.

45. Moreover, at the return date of the Order to Show Cause, Plaintiffs will be entitled to a preliminary injunction: (a) mandating and requiring the Defendants to return the original Charys Warrants to Plaintiffs; and/or (b) mandating and requiring Defendants to give instructions to Charys to cancel and render null and void any "Reissued" warrants, and to re-register 1,000,000 Charys Warrants in the name of Highgate House under the same terms and conditions of the original transaction; and/or (c) enjoining and prohibiting Defendants from exercising or otherwise disposing of the Charys Warrants, the "Reissued Warrants," or, to the extent Defendants have already exercised the Reissued Warrants, enjoining and prohibiting Defendants from selling, assigning, hypothecating, pledging or otherwise disposing of the Charys stock; (d) imposing a constructive trust on any warrants held by Defendants, on any common stock held by Defendants to the extent they already exercised warrants, and on any proceeds of the sale of any such warrants or stock; (e) removing G&P as Escrow Agent with respect to the Charys Transaction; and (f) for an accounting of all securities and other investment-related instruments held by Gottbetter and/or the Lawyer Defendants for or on behalf of Highgate House.

## COUNT ONE

### (Conversion)

46. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 45 as if fully set forth at length herein.

47. Defendants exerted dominion and control over the Charys Warrants without Plaintiffs' knowledge, authority or consent, by delivering the Charys Closing Binder to Plaintiffs

11

without the original warrants. In doing so, Defendants wrongfully took possession of Plaintiff Highgate House's property which they were required to hold in trust for the sole and exclusive benefit of Highgate House.

48. Upon discovery of the fact that Defendants had surreptitiously removed the original Charys Warrants from Plaintiffs' premises and had left only copies of the warrants in the Charys Closing Binder, Plaintiffs made demand upon Defendants that the Charys Warrants be returned to Plaintiffs.

49. Defendants refused Plaintiffs' demand and failed to deliver the Charys Warrants into Plaintiffs' possession.

50. Defendants compounded their wrongful conduct by causing some of the Charys Warrants to be reissued in the name of at least Defendants HHA and Chorske, and possibly other of the Defendants.

51. Defendants caused some of the Charys Warrants to be reissued with the intent of depriving Plaintiff Highgate House, the rightful owner of the Charys Warrants, of the Charys Warrants and underlying Charys common stock, with the intent of obtaining for Defendants HHA, Chorske and possibly others the Charys Warrants, the underlying Charys common stock and the substantial sums of money for which the Charys Warrants or stock could be sold.

52. Defendants did not have the right or authority to cause any of the Charys Warrants to be transferred or to be reissued in the name of persons or entities other than Plaintiff Highgate House.

53.     Plaintiff Highgate House was the sole owner of the Charys Warrants and the only entity that had the authority to cause a transfer of the Charys Warrants or to instruct the issuer, Charys, to reissue the Charys Warrants.

54.     Plaintiff Highgate House did not authorize any transfer of the Charys Warrants and did not instruct Charys to reissue any of the Charys Warrants to HHA, Chorske or any of the other Defendants.

55.     Defendants' transfer of some of the Charys Warrants and their refusal to deliver the original Charys Warrants and the Reissued Warrants to Plaintiffs is wrongful and constitutes an illegal conversion of Plaintiff Highgate House's property.

56.     As a direct and proximate result of Defendants' wrongful conversion of Plaintiff Highgate House's property, Plaintiffs have suffered and will continue to suffer immediate and irreparable harm, because they will be deprived of valuable property that should be part of a private equity fund, and will be deprived of the ability to make investment decisions on behalf of the fund's numerous limited partners and investors.

57.     Without the Charys Warrants, the net asset value of the Highgate House fund is negatively impacted, thereby resulting in negative consequences for Highgate House's limited partners and investors, who are innocent third parties.

## COUNT TWO

### (Breach of the Lawyer Defendants' Fiduciary Duties)

58.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 57 as if fully set forth at length herein.

13

59.     The Lawyer Defendants (G&P, Gottbetter, Rimland, and Dockery) were retained by and rendered legal advice and services to Highgate House as Highgate House's legal counsel in the Charys Transaction.

60.     The Lawyer Defendants took possession of the original Charys Warrants without Plaintiffs' knowledge, consent or authority.

61.     The Charys Warrants constituted client property and the Lawyer Defendants owed Plaintiffs a fiduciary duty to save, preserve and protect the Charys Warrants for the sole and exclusive benefit of Highgate House.

62.     As attorneys at law, the Lawyer Defendants also owed legal and ethical duties to their former clients, Plaintiffs herein, to save, preserve and protect the Charys Warrants for the sole and exclusive benefit of Highgate House and to not dispose of, misappropriate or waste the Charys Warrants.

63.     The Lawyer Defendants owed a legal and ethical duty to communicate with their former clients, Plaintiffs herein, and to obtain their clients' informed consent and authority before disposing of, transferring or otherwise distributing the Charys Warrants to anyone other than Plaintiffs.

64.     The Lawyer Defendants owed legal and ethical duties to plaintiffs herein to refrain from representing their own interests or the interest of third parties adverse to Plaintiffs.

65.     In violation of their legal and ethical duties, the Lawyer Defendants transferred and disposed of the Charys Warrants to the use and benefit of their own interests, without the knowledge, consent and authority of Highgate House, their former client and the rightful owner of the Warrants.

66.    The actions of the Lawyer Defendants constitute a conversion and an unlawful misappropriation or disposition of client trust funds or property without the clients' knowledge, consent, or authorization, in violation of the Lawyer Defendants' fiduciary, legal and ethical duties toward plaintiffs.

67.    Defendant Gottbetter is especially culpable in this conversion and unlawful misappropriation and distribution of Highgate House's Charys Warrants because, in dealing with the Charys Warrants he had a disabling conflict of interest between his personal interests as the principal of HHA, which stood to gain fee income from the distribution of the Charys Warrants and the sale of the underlying stock; and his ethical and fiduciary duties to the Plaintiffs as their lawyer in the Charys Transaction and as the Co-Manager of the Highgate House fund.

68.    The conversion and unlawful misappropriation and disposition of the Charys Warrants in breach of the Lawyer Defendants ethical and legal obligations to the Plaintiffs has caused, and is continuing to cause, Plaintiffs damages and immediate irreparable harm in that, among other things, Plaintiffs have been deprived of valuable property that should be part of a private equity fund, and of the ability to make investment decisions on behalf of the fund's numerous limited partners and investors.

69.    The unethical conduct by Gottbetter (acting in part as principal of G&P) constitutes an egregious instance of self-dealing by a lawyer that renders G&P unfit to continue serving as Escrow Agent for the Charys Transaction.

## COUNT THREE

### (Breach of Contractual Fiduciary Duties)

70.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 69 as if fully set forth at length herein.

71.     Pursuant to the Sub-Manager Agreement, HHA and Gottbetter agreed to be subject to various fiduciary obligations and restrictive covenants during their Engagement as Co-Portfolio Manager of Plaintiff Highgate House and for 18 months thereafter.

72.     The Sub-Manager Agreement, and Defendants Gottbetter and HHA's positions as Co-Portfolio Manager of Highgate House, imposed upon them fiduciary duties of good faith and loyalty toward Yorkville and Highgate House both during their tenure as Co-Manager of Highgate House, and thereafter.

73.     Defendants Gottbetter and HHA breached their fiduciary duties to Plaintiffs by converting the Charys Warrants owned by Highgate House and causing those Warrants to be transferred and/or reissued to themselves and others acting in concert with them in order to elevate their own private pecuniary interests over the interests of Highgate House.

74.     Defendants Gottbetter's and HHA's breach of their fiduciary duties to Plaintiffs has caused, and is continuing to cause, Plaintiffs damages and immediate irreparable harm in that, among other things, Plaintiffs have been deprived of valuable property that should be part of Highgate House, a private equity fund, and of the ability to make investment decisions on behalf of the fund's numerous limited partners and investors.

16

## COUNT FOUR

### (Tortious Interference)

75.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 74 as if fully set forth at length herein.

76.    Plaintiff Highgate House entered into a contract with Charys whereby, in consideration of $4 million of funding from Highgate House, Charys issued the Charys Warrants to Highgate House providing Highgate House with the right to purchase 1,000,000 shares of Charys common stock.

77.    Defendants were aware of the contract and of Highgate House's ownership of the Charys Warrants.

78.    Defendants wrongfully and without justification or excuse interfered with Highgate House's contractual relations with Charys and its contractual right to purchase 1,000,000 shares of Charys common stock pursuant to the terms and conditions of the Charys Warrants, by causing Charys, through misrepresentation, artifice and deceit, to cancel the Charys Warrants and reissue the Warrants in substantial part to one or more of the defendants, all in violation of the Charys Agreement and in violation of the Lawyer Defendants' legal and ethical duties toward Plaintiffs.

79.    As a direct and proximate result of Defendants tortious interference with Plaintiff Highgate House's contractual rights, Plaintiffs have sustained, and are continuing to sustain, damages and immediate irreparable harm in that, among other things, Plaintiffs have been deprived of valuable property that should be part of Highgate House, a private equity fund, and of the ability to make investment decisions on behalf of the fund's numerous limited partners and investors.

WHEREFORE, Plaintiffs demand judgment on all counts of the Verified Complaint against Defendants as follows:

a.    For a temporary restraining order: (a) enjoining and prohibiting Defendants from exercising or otherwise disposing of the Charys Warrants or the "Reissued Warrants"; or (b) to the extent Defendants have already exercised the Reissued Warrants, enjoining and prohibiting Defendants from selling, assigning, hypothecating, pledging or otherwise disposing of the underlying Charys stock; or (c) to the extent Defendants have already sold the underlying stock, imposing a constructive trust on the proceeds of such sale.

b.    At the return date of the Order to Show Cause, for a preliminary injunction: (a) mandating and requiring the Defendants to return the original Charys Warrants to Plaintiffs; and/or (b) mandating and requiring Defendants to give instructions to Charys to cancel and render null and void any "Reissued" warrants, and to re-register 1,000,000 Charys Warrants in the name of Highgate House under the same terms and conditions of the original transaction; and/or (c) enjoining and prohibiting Defendants from exercising or otherwise disposing of the Charys Warrants, the "Reissued Warrants," or, to the extent Defendants have already exercised the Reissued Warrants, enjoining and prohibiting Defendants from selling, assigning, hypothecating, pledging or otherwise disposing of the Charys stock; (d) imposing a constructive trust on any warrants held by Defendants, on any common stock held by Defendants to the extent they already exercised warrants, and on any proceeds of the sale of any such warrants or stock; (e) removing G&P as Escrow Agent with respect to the Charys Transaction; and (f) for an accounting of all securities and other investment-related instruments held by Gottbetter and/or the Lawyer Defendants for or on behalf of Highgate House.

18

c.      For an Order awarding Plaintiffs compensatory, consequential, and punitive damages;

and

d.      For an Order awarding Plaintiffs attorneys' fees, costs of suit, and expert costs; and

e.      For an Order awarding Plaintiffs prejudgment and post-judgment interest; and

f.      For an Order awarding Plaintiffs such other legal and/or equitable relief as the Court

deems just and proper, including but not limited to permanent injunctive relief.

Respectfully submitted,

BUDD LARNER, P.C.
150 JFK Parkway, CN-1000
Short Hills, NJ 07078-2703
(973) 379-4800
Attorneys for Plaintiffs

By: _____
MICHAEL M. ROSENBAUM (MR-6304)

DATED: October 31, 2006

## LOCAL RULE 11.2 CERTIFICATION

I hereby certify that the matter in controversy is not currently the subject of any other action pending in any other court, or of any pending arbitration or administrative proceeding. I hereby certify that the foregoing statement is true. I am aware that if the foregoing statement by me is willfully false, I am subject to punishment.

_____
MICHAEL M. ROSENBAUM (MR-6304)

DATED: October 31, 2006

19

## VERIFICATION

I, TROY RILLO, of full age, hereby certify as follows:

1.      I am a Managing Director of Plaintiff Yorkville Advisors Management LLC and a Director of Plaintiff Highgate House Funds, Ltd.

2.      I have read the Verified Complaint, and all of the allegations contained therein are true and correct to my own personal knowledge, except those allegations made upon information and belief.

3.      I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


_____
TROY RILLO

Dated: October 30, 2006
618114w

20