## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YORKVILLE ADVISORS MANAGEMENT, LLC, a Delaware limited liability company; HIGHGATE HOUSE FUNDS, LTD., a Cayman Islands exempted company,      :    Plaintiffs, :    vs. :    ADAM S. GOTTBETTER; HH ADVISORS, LLC, a New York limited liability company; GOTTBETTER AND PARTNERS LLP, a New York limited liability partnership; JASON RIMLAND, ESQ.; TIM L. DOCKERY, ESQ., and MICHAEL CHORSKE, :    Defendants. | Civil Action No. |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS

---

BUDD LARNER, P.C.
Michael M. Rosenbaum, 6304
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
(973) 379-4800

Attorneys for Plaintiffs

On the brief:
Richard M. DeAgazio
Michael M. Rosenbaum

## TABLE OF CONTENTS

PELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT I: PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A. PLAINTIFFS HAVE A PROBABILITY OF SUCCESS ON THE
        MERITS OF THEIR CLAIMS FOR CONVERSION AND BREACH
        OF FIDUCIARY DUTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1. Plaintiffs Have a Probability of Succeeding on their Conversion Claim . . . . . . . . 5

        2. Plaintiffs Have a Probability of Succeeding on their Breach of
           Fiduciary Duty Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B. PLAINTIFFS WILL SUFFER IMMEDIATE AND IRREPARABLE
        HARM IF THE INJUNCTION IS NOT GRANTED . . . . . . . . . . . . . . . . . . . . . . . 12

     C. THE BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF THE
        PLAINTIFFS BECAUSE THEY WILL SUFFER IRREPARABLE
        HARM IF THE INJUNCTION DOES NOT ISSUE AND DEFENDANT
        WILL SUFFER NO HARM IF IT DOES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     D. THE ISSUANCE OF THE PRELIMINARY INJUNCTION WILL
        SERVE THE PUBLIC INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT II: PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY PENDING
THE RETURN DATE OF THE ORDER TO SHOW CAUSE . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## PRELIMINARY STATEMENT

This action arises out of the theft and conversion of certain "warrants" by the defendants, who were acting as fiduciaries in holding those warrants in trust for the plaintiff Highgate House Funds, Ltd., the registered owner. Defendants violated their fiduciary and ethical duties by transferring the warrants to themselves without plaintiff's knowledge, consent or authority. Highgate House and its investment manager, plaintiff Yorkville Advisors Management LLC, bring this Order to Show Cause With Temporary Restraints in order to restrain defendants from disposing of the warrants and the underlying stock until the return date, at which time plaintiffs will seek a preliminary injunction directing defendants to return the warrants and/or to give instructions to the issuer to reissue the warrants to Highgate House.

In November 2005, Highgate House, a private equity fund, made a $4 million investment in Charys Holding Company, Inc., a small publicly-traded company, in consideration for which it received a convertible debenture and warrants to purchase 1,000,000 shares of Charys common stock ("the Charys Warrants"). Defendant HH Advisors LLC ("HHA") and its principal, defendant Adam S. Gottbetter, were Highgate House's Co-Portfolio Managers and negotiated the Charys deal on its behalf. Gottbetter is also a practicing securities law attorney, and he and his law firm, defendant Gottbetter & Partners LLP ("G&P"), represented Highgate House in the Charys transaction and prepared all of the legal documents.

In January 2006, HHA and Gottbetter terminated their engagement as Highgate House's Co-Manager. However, unbeknownst to plaintiffs, Gottbetter and G&P retained the original Charys Warrants in their possession, thereby assuming a fiduciary duty over their former clients' property which they now held in trust. Thereafter, in what can only be viewed as a blatant *theft* of client trust funds or property, Gottbetter and the other defendants transferred or caused Charys

to reissue 555,200 of the Charys Warrants to defendants HHA and defendant Michael Chorske – without plaintiffs' knowledge, consent or authority. Defendants claim that they are entitled to a portion of the Charys Warrants (or the proceeds thereof) as management or banker's fees purportedly owing from the underlying Charys transaction. However, this claim is disputed by plaintiffs and in any event is subject to mandatory and binding arbitration pursuant to a written contract among Yorkville, HHA and Gottbetter. Regardless of the merits, defendants had no legal authority to transfer the Charys Warrants in order to satisfy this purported claim, because the Warrants were registered in the name of, and thus owned by, Highgate House alone.

The actions of the lawyer defendants – Gottbetter, G&P, and two of its associates – are especially reprehensible because they represented plaintiffs in the Charys transaction and thus owed plaintiffs fiduciary duties of good faith, fidelity, and loyalty. In violation of these duties, as well as lawyer ethical rules, the lawyer defendants misappropriated client trust funds or property in disbursing more than half of the Charys Warrants in order to pay one of their own (Gottbetter, as principal of HHA) a purported fee that is arbitrable.

The Court cannot abide a lawyer-fiduciary's misappropriation of trust property. Ultimately, on the return date of the Order to Show Cause, plaintiffs will seek a preliminary injunction reversing this theft and restoring the trust property to the plaintiffs. For now, it is imperative that defendants be temporarily restrained from exercising the Warrants or disposing of the underlying stock. Without this restraint, plaintiffs will suffer irreparable harm because the Highgate House fund will be deprived of valuable property, which will reduce the fund's net asset value and thereby injure the fund's numerous investors who are innocent third parties. In contrast, defendants will suffer no harm at all from this restraint, because they will still possess the right to pursue their underlying claim for management and banker fees in arbitration.

618208.W

## STATEMENT OF FACTS

For their statement of facts, plaintiffs incorporate herein by reference the Verified Complaint.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION.

The court must carefully weigh four factors in considering whether to award preliminary injunctive relief: (1) whether the applicant has shown a reasonable probability of success on the merits; (2) the extent to which the applicant will be irreparably injured by denial of relief; (3) the extent to which the non-moving party will be harmed if the preliminary injunction is issued; and (4) whether granting preliminary relief will be in the public interest. See Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-192 (3d Cir. 1990), citing Bill Blass, Ltd. v. Saz Corp., 751 F.2d 152, 154 (3d Cir. 1984); see also Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 129 F. Supp.2d 351 (D.N.J. 2000), aff'd 290 F.3d 578 (2002). The purpose of such relief is to preserve the status quo of an action pending final determination so that defendant's conduct does not moot subsequent relief. See W.P. v. Poritz, 931 F. Supp. 1187 (D.N.J. 1996). The decision to grant or deny an application for preliminary injunctive relief rests in the sound discretion of the trial judge and will only be reversed when the district court has committed a "clear error of judgment." Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 813 (3d Cir. 1989).

Here, as shown below, plaintiffs can satisfy all of the elements necessary to obtain temporary and preliminary injunctive relief. Therefore, plaintiffs are immediately entitled to a

- 3 -

618208.W

temporary restraining order: (a) enjoining and prohibiting defendants from exercising or otherwise disposing of the Charys Warrants or the "Reissued Warrants"; or (b) to the extent defendants have already exercised the Reissued Warrants, enjoining and prohibiting defendants from selling, assigning, hypothecating, pledging or otherwise disposing of the underlying Charys stock; or (c) to the extent defendants have already sold the underlying stock, imposing a constructive trust on the proceeds of such sale.

Moreover, at the return date, plaintiffs will be entitled to a preliminary injunction (a) mandating and requiring the defendants to return the original Charys Warrants to Plaintiffs; and/or (b) mandating and requiring defendants to give instructions to Charys to cancel and render null and void any "Reissued" warrants, and to re-register 1,000,000 Charys Warrants in the name of Highgate House under the same terms and conditions of the original transaction; and/or (c) enjoining and prohibiting defendants from exercising or otherwise disposing of the Charys Warrants, the "Reissued Warrants," or, to the extent defendants have already exercised the Reissued Warrants, enjoining and prohibiting defendants from selling, assigning, hypothecating, pledging or otherwise disposing of the Charys stock; (d) imposing a constructive trust on any warrants held by defendants, on any common stock held by defendants to the extent they already exercised warrants, and on any proceeds of the sale of any such warrants or stock; (e) removing G&P as Escrow Agent with respect to the Charys transaction; and (f) for an accounting of all securities and other investment-related instruments held by Gottbetter and/or the Lawyer Defendants for or on behalf of Highgate House.

### A. PLAINTIFFS HAVE A PROBABILITY OF SUCCESS ON THE MERITS OF THEIR CLAIMS FOR CONVERSION AND BREACH OF FIDUCIARY DUTY.

"In order to show a likelihood of success on the merits, the law of this Circuit requires a moving party to demonstrate, not 'a certainty of prevailing, but rather... a reasonable probability

- 4 -

of eventual success in the litigation.'" Assisted Living Associates of Moorestown, LLC v. Moorestown Twp., 996 F. Supp. 409, 433 (D.N.J. 1998), *citing* Hill Int'l v. Nat'l R.R. Passenger Corp., 957 F. Supp. 548 (D.N.J. 1996); see also Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) ("[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie...showing [of] a reasonable probability that it will prevail on the merits"); Beilowitz v. General Motors Corp., 233 F. Supp.2d 631, 639 (D.N.J. 2002) ("[o]n application for a preliminary injunction in the early stages of a case, the plaintiff need only make a showing of reasonable probability, not the certainty, of success on the merits"). Here, Plaintiffs can show that they have a probability of succeeding on the merits of their claims for conversion and breach of the fiduciary duty.

### 1. Plaintiffs Have a Probability of Succeeding on their Conversion Claim.

Under New Jersey law, conversion is defined as "the exercise of any act of dominion in denial of another's title to... chattels, or inconsistent with such title." Mueller v. Technical Devices Corp., 8 N.J. 201, 207 (1951). "To constitute a conversion of goods, there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel." Id. Significantly, it is not essential to conversion that "the motive or intent with which the act was committed should be wrongful, or willful or corrupt." McGlynn v. Schultz, 90 N.J. Super. 505 (Ch. Div. 1966), *aff'd* 95 N.J. Super. 412 (App. Div.), *certif. denied*, 50 N.J. 409 (1967). Instead, "it is the effect of the act that constitutes conversion." Charles Bloom & Co. v. Echo Jewelers, 279 N.J. Super. 372, 381 (App. Div. 1995). In short, to prevail on their claim for conversion, plaintiffs must simply establish: (1) the existence of property and

- 5 -

618208.W

their right to immediate possession thereof, and (2) the wrongful interference with that right by defendants. Plaintiffs can readily satisfy these elements of conversion.

First, the Charys Warrants constitute valuable property, and Highgate House had a right to immediate possession thereof in view of the fact that the Warrants are registered in Highgate House's name. Indeed, a Registration Statement filed by Charys on October 17, 2006 – the very same day plaintiffs demanded that defendants return the original Warrants – *confirmed* Highgate House's ownership of the 1,000,000 Warrants. See Verified Complaint, at ¶30 and Exhibit E thereto.

Second, defendants wrongfully interfered with Highgate House's ownership rights in the Charys Warrants. Initially, the Lawyer Defendants' surreptitious actions in retaining possession of the original Charys Warrants constituted a wrongful interference with Highgate House's property rights. As the client, Highgate House was entitled to possession of the original Warrants. See, e.g., N.J. Advisory Comm. on Professional Ethics, Opinion 692 (Jan. 15, 2001) (stating that all original documents in a client file, such as wills, trusts, deeds, stock certificates, contracts, corporate minutes, and by-laws, remain the client's property). Moreover, even if the Lawyer Defendants' possession of the original Warrants can somehow be viewed as permissible – despite their deceptive conduct – their refusal to return the original Warrants upon plaintiffs' October 17, 2006 demand constituted a wrongful interference with plaintiffs' ownership rights. See Mueller, 8 N.J. at 207 (where possession of chattels is lawfully acquired, a demand and refusal to deliver is evidence that a conversion has been committed).

Finally, Defendants' transfer and/or reissuance of 555,200 of the Warrants to HHA, Chorske, and possibly Rimland – through unauthorized execution of the Warrant certificates or assignment forms and/or fraudulent misrepresentations made by Charys that Highgate House

618208.W

was no longer in existence – "changed  the quality of the chattel" and thus interfered with plaintiffs' ownership rights.  Id. at 207.  Indeed, those acts constituted a blatant *theft* of plaintiffs' Warrants and is punishable as a crime.  See N.J.S.A. 2C:21-15 (criminalizing disposal of property entrusted to one as a fiduciary); N.J.S.A. 2C:20-9 (criminalizing retention of property subject to a known legal obligation).

Based on the foregoing, Plaintiffs are likely to succeed on their conversion claim against the defendants.

### 2. Plaintiffs Have a Probability of Succeeding on their Breach of Fiduciary Duty Claim.

Plaintiffs are also likely to prevail on their claim for defendants' breach of their various fiduciary duties to Plaintiffs.  The New Jersey Supreme Court has described the nature of a fiduciary relationship as involving the utmost in trust and confidence:

> The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. *Restatement (Second) of Torts §874* cmt. a (1979); *see In re Stroming's Will,* 12 *N.J.Super.* 217,224, 79 *A.*2d 492 (App. Div.), *certif. denied,* 8 *N.J.* 319, 85 *A.*2d 272 (1951) (stating essentials of confidential relationship "are a reposed confidence and the dominant and controlling position of the beneficiary of the transaction"); *Blake v. Brennan,* 1 *N.J.Super.* 446, 563, 61 *A.*2d 916 (Ch.Div.1948) (describing "the test [as] whether the relationship between the parties were of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other"); *Bogert, Trusts and Trustees* 2d §481 (1978) (stating "[t]he exact limits of the term 'fiduciary relation' are impossible of statement. Depending upon the circumstances of the particular case or transaction, certain business, public or social relationships may or may not create or involve a fiduciary character."). The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care. *Restatement (Second) of Trusts §§170, 174 (1959).* Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship. *Restatement (Second) of Torts §874 (1979).*

F.G. v. MacDonnell, 150 N.J. 550, 563-564 (1997).

618208.W

Against this backdrop, the Defendants owed fiduciary duties toward plaintiffs in two contexts.

First, HHA and Gottbetter owed fiduciary duties to Yorkville and Highgate House in their capacity as former Co-Managers of the fund. These fiduciary duties arose by operation of law and by virtue of the Sub-Manager Agreement, which specifically imposed such duties upon HHA and Gottbetter. See Verified Compl., Exhibit A, § 5 (stating that HHA and Gottbetter owe "a fiduciary duty to [Plaintiffs] and, in that regard, shall owe a duty of trust, utmost loyalty and good faith to [Plaintiffs]"). These fiduciary duties required HHA and Gottbetter to act in the best interests of the fund and not to further their own personal or pecuniary interests. However, HHA and Gottbetter breached these fiduciary duties by converting Highgate House's Charys Warrants to their own use, to the disadvantage of the fund. Even though defendants believe they are entitled to some commission from the Charys Transaction, the fact remains that the Charys Warrants were registered to Highgate House, and thus only Highgate House had the legal authority to sell, transfer, assign, authorize the reissuance of, or otherwise dispose of the Warrants. The dispute over fees should have been submitted to arbitration pursuant to Section 10 of the Sub-Manager Agreement. See Exhibit A, § 10. Defendants had no authority to use self-help and cause the Warrants to be reissued to themselves.

Second, Gottbetter and the other Lawyer Defendants owed fiduciary duties toward Plaintiffs, who were their former clients in the Charys transaction, including duties of good faith, loyalty and fidelity that the term "fiduciary" implies. See, e.g., In re Loring, 73 N.J. 282, 289-290 (1977) ("the attorney-client relationship embodies the concept of the client's trust in his fiduciary, his attorney"); In re Honig, 10 N.J. 74, 78 (1952) ("all fiduciaries are held to a duty of

- 8 -

618208.W

fairness, good faith and fidelity, but an attorney is held to an even higher degree of responsibility in these matters than is required of all others"). As the United States Supreme Court aptly noted:

> There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably or faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.

Id., _citing_ Stockton v. Ford, 52 U.S. 232, 247, 13 L.Ed.676 (1850). The New Jersey Supreme Court has similarly stated, "Lawyers are more than fiduciaries; they are representatives of a profession and officers of the Supreme Court." In re Wilson, 81 N.J. 451, 458 (1979).

The fact that the Lawyer Defendants took possession of Warrants registered in Highgate House's name further highlights their fiduciary obligations to Plaintiffs. When an attorney holds client funds or property, or even funds or property of third parties, a trust relationship is created. See In re Hollendonner, 102 N.J. 21, 22 (1985) (attorney who receives escrow funds acts as an agent or trustee for both parties and must obtain consent of both parties before using the funds); Dynasty Building Corp. v. Ackerman, 376 N.J. 280, 287 (App. Div. 2005) (attorney would owe a fiduciary relationship to a third party he never represented if third party could establish that all or some of the monies he was holding in trust belonged to it).

The Lawyer Defendants breached their fiduciary and ethical obligations by converting the Charys Warrants. A lawyer has a strict obligation to safeguard client trust funds or property. See N.J. RPC 1.15. Even if the Lawyer Defendants believed HHA and Chorske had a claim for management or broker fees, the Lawyer Defendants had no right to dispose of the Warrants without plaintiffs' knowledge, consent and authority. RPC 1.15, which sets forth an attorney's obligations to his client with regard to funds and property, states in relevant part:

618208.W

(c)  When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests.  If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

Here, Plaintiffs dispute Defendants' claim for a percentage of the gross amount of the Warrants. When this dispute developed, RPC 1.15(c) imposed on the Lawyer Defendants the duty to set aside the disputed Warrants and to hold them in trust pending a resolution of the dispute.

However, in violation of this obligation, the Lawyer Defendants instead made their own determination of the merits of the dispute, and chose to favor the claimants over their own clients.   Indeed, the Lawyer Defendants did not even consult plaintiffs in making this determination, choosing instead to secretly, surreptitiously, and unilaterally cause the Warrants to be transferred or reissued to the claimants.   These actions constitute an unlawful misappropriation or disposition of client trust funds or property without the clients' knowledge, consent, or authorization, in violation of RPC 1.15. See Dynasty Building Corp., 376 N.J. at 287 (attorney holding trust funds was not free to act unilaterally in disbursing those funds in the face of conflicting claims); See also RPC 1.2 and RPC 1.4 (lawyer required to consult and communicate with client regarding decisions within scope of representations); RPC 8.4(c) (professional misconduct includes "conduct involving dishonesty, fraud, deceit or misrepresentation").

Gottbetter is especially culpable in these unethical activities because he had a disabling conflict of interest between his personal interests as the principal of HHA, which stood to gain fee income from the distribution of the Warrants; and his professional interests as a lawyer who owed ethical and fiduciary duties to the plaintiffs.  Gottbetter breached his ethical and fiduciary duties by misappropriating client trust funds or property to satisfy his own pecuniary interests (as

618208.W

principal in HHA). This constitutes an egregious instance of self-dealing by a lawyer that renders G&P unfit to continue serving as Escrow Agent for the Charys transaction. See RPC 1.7(a)(2) (conflict of interest exists where "there is a significant risk that the representation of [a client] will be materially limited by the lawyer's responsibilities to...a third person or by a personal interest of the lawyer"); In re Herbstman, 84 N.J. 485, 491-494 (1980) (failure of attorney to relieve himself of irreconcilable conflict regarding claims to funds held in his trust account, including his own claim for payment of fees, warranted suspension).

Actions similar to Gottbetter's most serious transgression, *i.e.*, disbursing the Warrants to pay himself management fees he claimed were due in his capacity as Co-Manager of the Highgate House fund, have previously resulted in significant discipline for attorneys. See In re McKinney, 139 N.J. 388 (1995) (attorney disciplined in part for "disbursing funds he knew were in dispute"); In re Hoerst, 135 N.J. 98, 104-105 (1994) (six-month suspension was appropriate sanction for attorney who committed third-degree theft when, in his capacity as county prosecutor, he misused forfeiture funds to pay for himself and a female companion to attend an out of state convention and go on a three-day side-trip); In re Gold, 98 N.J. 53, 54-57 (1984) (misapplication of entrusted property required disbarment); Wilson, 81 N.J. at 461 (1979) (disbarment warranted for knowing use of a client's funds for personal benefit).

New York's Rules of Professional Responsibility, DR 1-102, DR 1-104, DR 1-105, DR 4-101(b)(3), DR 5-101, DR 5-104 and DR 9-102(a) establish ethical norms similar or identical to those contained in New Jersey's RPCs. Thus, to the extent New York's ethical rules might also apply, the Lawyer Defendants violated those rules too.

Based on the foregoing, Plaintiffs are likely to succeed on their breach of fiduciary duty claims against the defendants.

618208.W

**B.    PLAINTIFFS WILL SUFFER IMMEDIATE AND IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED.**

The second factor this Court must consider in deciding whether to grant a preliminary injunction is whether the plaintiff will suffer irreparable injury of the injunction is not granted. Opticians, 920 F.2d at 191-192. Here, Plaintiffs will be irreparably harmed if the defendants are permitted to misappropriate property entrusted to them, to the detriment of Highgate House's numerous investors, who are innocent third parties.

As set forth above, when the Lawyer Defendants retained possession over the original Charys Warrants, they assumed a fiduciary obligation to Plaintiffs to hold the Warrants in trust for Plaintiffs, who were their clients. "Equity has always been charged with the preservation of the status quo and the management of assets committed to the care of a fiduciary." Thus, where property held in trust has been misappropriated, irreparable harm is presumed. See Delaware River and Bay Auth. v. York Hunter Constr., Inc., 344 N.J. Super. 361, 369-70 (Ch. Div. 2001) (issuing preliminary injunction to prevent further dissipation of trust funds, because defendant misappropriated funds despite statutory duty to hold funds in trust). The Court in Delaware River noted that the relief sought by the plaintiff was "the functional equivalent of an action seeking to compel the defendant to refund a trust improperly depleted," an "action [that is] routinely committed to the equity courts and...an appropriate subject for preliminary relief." Id. at 369-70.

Similarly, here, by improperly causing Charys to reissue to third parties the Warrants that the Lawyer Defendants were holding in trust on behalf of Highgate House, the Lawyer Defendants depleted the assets of the trust, thereby injuring the trust beneficiaries – the numerous fund investors who are innocent third parties. Indeed, Highgate House will now be deprived of valuable property that should be part of a private equity fund – thereby diminishing

- 12 -

618208.W

the fund's net asset value – and will be deprived of the ability to make investment decisions on behalf of the fund's numerous limited partners and investors. Moreover, Charys is a small company, and while it is publicly traded, it is traded on the "Over the Counter Bulletin Board" and is subject to wild fluctuations in trading price. An attempt to sell a large quantity of shares, such as the 555,200 shares defendants would obtain were they to exercise the "Reissued Warrants," will likely cause the market value of Charys stock to decline – thereby reducing the value of Highgate House's Charys Warrants by an untold amount.

C.    **THE BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF THE PLAINTIFFS BECAUSE THEY WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION DOES NOT ISSUE AND DEFENDANTS WILL SUFFER NO HARM IF IT DOES.**

As noted above, in determining whether to issue a preliminary injunction, the extent to which defendants will suffer harm from the injunction should also be considered. "In considering this harm, the district court must undertake to balance the hardships of the parties." Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 ((3d Cir. 1998) (*citing* Opticians, 902 F.2d at 197). Balancing the equities here clearly weighs in Plaintiffs favor because granting an injunction (and temporary restraints) will not harm defendants, but denying one would *irreparably* harm Plaintiffs.

As set forth above, Plaintiffs will suffer immediate and irreparable harm if the temporary restraints and preliminary injunction they seek are issued. Plaintiffs will be deprived of unique property that was being held in trust for them by their lawyer-fiduciaries, and that property will likely be sold or otherwise dissipated without an injunction. As a result, the value of the Highgate House Fund will be reduced, thereby impacting the investments of numerous limited partners of Highgate House, who are innocent third-parties.

- 13 -

618208.W

On the other hand, the granting of the temporary restraints and preliminary injunction will cause minimal if any harm to the defendants who have already taken unfair advantage of their fiduciary positions to convert Plaintiffs' property for their own benefit. Indeed, the relief Plaintiffs seek in this Order to Show Cause does not eliminate any claim for management or banker fees HHA and Chorske may have with regard to the Warrants, nor does it extinguish their right, if any, to a portion of the cash proceeds received after the Warrants are exercised and the resulting stock sold. Rather, as the temporary and preliminary injunctive relief will simply return the parties to the *status quo ante* -- that is, the *status quo* before defendants' theft – defendants will be hard pressed to show any harm that might befall them. Defendants will still have the ability to pursue their claim for management and banker fees in arbitration.

Thus, in balancing the hardships, the equities favor Plaintiffs, the innocent victims of defendants' theft and deception of their trust property. Plaintiffs are therefore entitled to a temporary restraining order and a preliminary injunction against the defendants.

### D. THE ISSUANCE OF THE PRELIMINARY INJUNCTION WILL SERVE THE PUBLIC INTEREST.

The final factor the court considers in determining whether to issue a preliminary injunction is whether the injunctive relief will serve the public interest. Significantly, "[w]here a party demonstrates both the likelihood of success on the merits and irreparable injury, 'it almost always will be the case that the public interest will favor' the issuance of an injunction." Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 532-533 (D.N.J. 1999), *citing* American Telegraph & Telephone Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir.), *cert. denied*, 514 U.S. 1103 (1995). Here, since Plaintiffs have demonstrated both likelihood of success on the merits of its conversion and breach of fiduciary duty claims against the defendants and irreparable injury, this presumption should apply.

- 14 -

618208.W

In any event, the temporary restraints and preliminary injunction will serve the public interest. First, as noted above, if the injunction is not granted, defendants' theft of the Charys Warrants will cause the value of the Highgate House Fund to be reduced, thereby impacting the investments of the numerous individual investors of Highgate House, who are innocent third-parties. The protection of these innocent investors is obviously in the public interest.

Moreover, the issuance of the preliminary injunction also serves the public interest in preserving the strict fiduciary duty owed by attorneys to their clients and bolstering the public's confidence in, and perception of, the legal profession. The preliminary injunction likewise protects the integrity of the securities industry and its representatives. A final consideration here is the strong public policy against theft of property. See N.J.S.A. 2C:20-3(a) (theft by unlawful taking or disposition – movable property); 2C:20-4 (theft by deception); 2C:20-9 (theft by failure to make required disposition of property): 2C:21-15 (misappropriation of entrusted property).

Given these significant public interests that will be protected by the issuance of the preliminary injunction, it is clear that the injunctive relief sought will serve the public interest and thus should be granted.

618208.W

## POINT II

### PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY PENDING THE RETURN DATE OF THE ORDER TO SHOW CAUSE.

Plaintiffs require a short period of discovery prior to the return date of the Order to Show Cause in order to exchange paper discovery, subpoena documents from third parties and conduct depositions. This short discovery period will enable Plaintiffs to more fully develop the facts surrounding defendants' conversion of the Warrants, as well as the extent of defendants' breach of the fiduciary duties they owed to Plaintiffs. Because of the limited nature of the temporary restraints Plaintiffs seek, defendants will not be unduly prejudiced by this request.

618208.W

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that it be granted the following injunctive relief as follows:

I.    A temporary restraining order, immediately: (a) enjoining and prohibiting defendants from exercising or otherwise disposing of the Charys Warrants or the "Reissued Warrants"; or (b) to the extent defendants have already exercised the Reissued Warrants, enjoining and prohibiting defendants from selling, assigning, hypothecating, pledging or otherwise disposing of the underlying Charys stock; or (c) to the extent defendants have already sold the underlying stock, imposing a constructive trust on the proceeds of such sale; and, at the return date of the Order to Show Cause,

II.    A preliminary injunction: (a) mandating and requiring the defendants to return the original Charys Warrants to Plaintiffs; and/or (b) mandating and requiring defendants to give instructions to Charys to cancel and render null and void any "Reissued" warrants, and to re-register 1,000,000 Charys Warrants in the name of Highgate House under the same terms and conditions of the original transaction; and/or (c) enjoining and prohibiting defendants from exercising or otherwise disposing of the Charys Warrants, the "Reissued Warrants," or, to the extent defendants have already exercised the Reissued Warrants, enjoining and prohibiting defendants from selling, assigning, hypothecating, pledging or otherwise disposing of the Charys stock; (d) imposing a constructive trust on any warrants held by defendants, on any common stock held by defendants to the extent they already exercised warrants, and on any proceeds of the sale of any such warrants or stock; (e) removing G&P as Escrow Agent with respect to the Charys transaction; and (f) for an accounting of all securities and other investment-related

- 17 -

618208.W

instruments held by Gottbetter and/or the Lawyer Defendants for or on behalf of Highgate House.

Respectfully submitted,

**BUDD LARNER, P.C.**
Attorneys for Plaintiffs

BY: _____
MICHAEL M. ROSENBAUM (MR-6304)

DATED: October 31, 2006

- 18 -

618208.W