August C. Venturini, Esq. (AV 2804)
Sean W. Higgins, Esq. (SH 4190)
VENTURINI & ASSOCIATES
230 Park Avenue, Suite 545
New York, NY 10169
Tel: (212) 826-6800

Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------x

YORKVILLE ADVISORS MANAGEMENT, :    Civil Action No. 06-5212 (JAG)
LLC, a Delaware limited liability company; :
HIGHGATE HOUSE FUNDS, LTD., a :
Cayman Islands exempted company, :
     :
         Plaintiffs, :
     :
     :
    -v- :
     :    **AFFIDAVIT OF MICHAEL CHORSKE**
ADAM S. GOTTBETTER; HH ADVISORS, :    **IN OPPOSITION TO PLAINTIFFS'**
LLC, a New York limited liability company; :    **MOTION FOR A PRELIMINARY**
GOTTBETTER AND PARTNERS LLP, a :    **INJUNCTION AND IN SUPPORT OF**
New York limited liability partnership; :    **DEFENDANTS' CROSS-MOTION TO**
JASON RIMLAND, ESQ.; TIM L. :    **COMPEL ARBITRATION**
DOCKERY, ESQ. and MICHAEL CHORSKE, :
     :
         Defendants. :
-------------------------------------------------------------x

STATE OF NEW YORK     )
                     ) ss.:
COUNTY OF NEW YORK   )

MICHAEL CHORSKE, being duly sworn, deposes and says:

1. I am a defendant in the above-captioned action. I make this affidavit: (a) in opposition to the motion of plaintiffs Yorkville Advisors Management, LLC ("YAM") and Highgate House Funds, Ltd. ("Highgate"); and (b) in support of the cross-motion of defendants Adam S. Gottbetter ("Gottbetter"), HH Advisors, LLC ("HHA"), Gottbetter & Partners LLP,

1

Jason Rimland, Esq., Tim L. Dockery, Esq. and Michael Chorske for an order, pursuant to 9 U.S.C. § 4, dismissing this action and compelling arbitration of the parties' dispute.

2. I have provided investment banking services in connection with numerous investments by Highgate and other related entities (collectively, the "Highgate Entities"). In each of these deals, HHA through Adam Gottbetter, along with YAM through Mark Angelo, was a co-portfolio manager for the Highgate Entities.

3. I had a specific agreement with HHA, as co-portfolio manager for the Highgate Entities, that a certain percentage of the equity, such as warrants issued on each of those deals (as long as the deal was not a so-called "504" transaction or where equity was the main investment) would be issued directly to me as part of my fee for investment banking services.

4. I provided investment banking services in connection with Highgate's November 2005 $4 million investment in Charys Holding Company, Inc. ("Charys") (the "Charys Transaction"). These investment banking services included finding the deal, structuring the transaction, primarily the purchase of convertible debentures, and managing all parties in the process of completing the Charys Transaction.

5. It was always my understanding that, as with other deals involving the Highgate Entities, in addition to my investment banker fees (paid in cash at the closing of transaction), a percentage of the warrants issued by Charys would be issued directly to me as part of my fee. It was agreed that 10-20% of the warrants to purchase 1,000,000 shares of Charys common stock (the "Charys Warrants") that were issued in the Charys Transaction would be issued directly to me.

6. It was never contemplated by HHA or me that YAM or Highgate would take possession of my warrants and only pay me the proceeds when and if YAM decided to exercise them and sell the underlying shares.

7. In December 2005, Adam Gottbetter told me that he just had a phone call with Mark Angelo who had asked for a valuation of warrants issued in Highgate transactions. Adam Gottbetter told me that Angelo's purpose of the valuation was for the benefit of YAM as it was contemplating adding certain warrants to the Highgate's NAV to boost and support its previously reported performance. Mr. Gottbetter then asked me to calculate a value for the Highgate warrants which I did.

8. On December 16, 2005, I e-mailed my valuation of the warrants to Mark Angelo among others. (A true and correct copy of my December 16th e-mail with the attached valuation is annexed hereto as Exhibit "P").

9. On December 21, 2005, YAM's newly hired CFO, Ed Schinik, confirmed that YAM was reviewing the warrant positions of Highgate and indicated that the valuation method of valuing any warrants to be listed as a Highgate asset must be consistent with the methodology employed by Cornell.

10. From July 2005 through January 2006, I looked at monthly statements of Highgate's assets prepared by YAM. At no point prior to HHA's departure as fund manager were warrants a component of the Highgate portfolio presented to me other than set forth on the attached November 30, 2005 statement; nor was I ever asked to value warrants to determine a fund's NAV prior to December 2005.

3

WHEREFORE, Defendants respectfully requests that Plaintiffs' motion for a preliminary injunction be denied, that Defendants' cross-motion for an order dismissing this action and compelling arbitration of the parties' dispute be granted, and that the Court award Defendants such other and different relief that is just and proper.

MICHAEL CHORSKE

Sworn to before me this
19th day of December 2006

Notary Public

SCOTT RAPFOGEL
Notary Public, State of New York
No. 02RA6094568
Qualified in New York County
Commission Expires June 23, 2007

4