August C. Venturini, Esq. (AV 2804)
Sean W. Higgins, Esq. (SH 4190)
VENTURINI & ASSOCIATES
230 Park Avenue, Suite 545
New York, NY 10169
Tel: (212) 826-6800

Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------x
YORKVILLE ADVISORS MANAGEMENT, :   Civil Action No. 06-5212 (JAG)
LLC, a Delaware limited liability company; :
HIGHGATE HOUSE FUNDS, LTD., a :
Cayman Islands exempted company, :
                        :
       Plaintiffs, :
                        :
  -v-                    :
                        :   **AFFIDAVIT OF JASON M. RIMLAND**
ADAM S. GOTTBETTER; HH ADVISORS, :   **IN OPPOSITION TO PLAINTIFFS'**
LLC, a New York limited liability company; :   **MOTION FOR A PRELIMINARY**
GOTTBETTER AND PARTNERS LLP, a :   **INJUNCTION AND IN SUPPORT OF**
New York limited liability partnership; :   **DEFENDANTS' CROSS-MOTION TO**
JASON RIMLAND, ESQ.; TIM L. :   **COMPEL ARBITRATION**
DOCKERY, ESQ. and MICHAEL CHORSKE, :
                        :
       Defendants. :
---------------------------------------------------------x

STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF NEW YORK  )

      JASON M. RIMLAND, being duly sworn, deposes and says:

      1.     I am a defendant in the above-captioned action.  I make this affidavit: (a) in opposition to the motion of plaintiffs Yorkville Advisors Management, LLC ("YAM") and Highgate House Funds, Ltd. ("Highgate") (YAM and Highgate are referred to herein collectively as "Plaintiffs") for a preliminary injunction; and (b) in support of the cross-motion of defendants

1

for an order, pursuant to 9 U.S.C. § 4, dismissing this action and compelling arbitration of the parties' dispute.

2.    I am an associate of Gottbetter & Partners LLP ("G&P").

3.    On January 18, 2006, I sent an e-mail to Troy Rillo that contained a spreadsheet containing the allocations of warrants in Highgate's investment known as the "Oxford/Uluru Transaction" as well as two other transactions with other companies. (A true copy of the 01-18-06 Spreadsheet is attached hereto as Ex. "I", D 01247-50, marked as Angelo Ex. 7). Each of the three spreadsheets in Ex. I clearly shows that warrants would be issued directly to HHA.

4.    On January 19, 2006, I sent an e-mail to YAM, including Christopher Maloney and Mark Angelo and Troy Rillo, containing a revised spreadsheet detailing the allocation of a total of 5 million warrants (the "Oxford Warrants") to be issued by Oxford Ventures, Inc. ("Oxford") in the Oxford/Uluru Transaction (the "OXFV Spreadsheet"). (Copies of the January 19, 2006 e-mail with the attached OXFV Spreadsheet are attached hereto as Ex. J).

5.    The OXFV Spreadsheet reflects the bankers' entitlement to 20% of the 5 million warrants to be issued by Oxford, or one million.

6.    Highgate's portion of the Oxford Warrants was 1,166,667 of which the bankers, Maloney and Mr. Keane, were entitled to 20% or 233,333 warrants leaving 933,334 warrants remaining. Highgate's remaining warrants were further allocated as follows: 414,400 to HHA (44.4%) and 518,933 to YAM (55.6%).

7.    In late December and/or early January 2006, Maloney told me that the banker warrants totaling 1 million would be issued directly to him and to co-banker Keane. In March, 2006, Maloney informed me that all bankers' warrants should instead be issued by Oxford in the name of Yorkville Advisors, LLC ("YA"). Thus, YA received warrants to purchase 1,518,933

shares of Oxford's common stock which consisted of the bankers' one million warrants plus YA's 518,933 warrants. None of the Oxford Warrants were issued to Highgate.

8. Although Troy Rillo questioned the issuance of warrants directly to HHA, YAM/YA agreed to the issuance of the 414,400 Oxford Warrants directly to HHA and were fully aware of such issuance. In fact, the signature pages of the Oxford Warrants, including the warrants issued to HHA and to YA were sent to the offices of YAM/YA. Plaintiffs' banker, Christopher Maloney, the banker on the Oxford/Uluru Transaction, sent the signature page of HHA's warrant to my office.

9. On or about November 16, 2005, Highgate closed a $4 million investment in Charys Holding Company, Inc. ("Charys") (the "Charys Transaction").

10. Following the closing of the Charys Transaction, G&P performed no legal work for Highgate. G&P has been the escrow agent for the underlying stock issued in the Charys Transaction that will be used upon any conversions of the Charys Warrants. That stock is still held by G&P as escrow agent.

11. G&P has never held the Charys Warrants in escrow, trust or other capacity. The Charys Warrants have been held by HHA in its offices which are separate from G&P's offices.

WHEREFORE, Defendants respectfully requests that Plaintiffs' motion for a preliminary injunction be denied, that Defendants' cross-motion for an order dismissing this action and compelling arbitration of the parties' dispute be granted, and that the Court award Defendants such other and different relief that is just and proper.

_____

JASON M. RIMLAND

Sworn to before me this
19th day of December 2006

_____
Notary Public

SCOTT RAPFOGEL
Notary Public, State of New York
No. 02RA6094568
Qualified in New York County
Commission Expires June 23, 2007

4